RENDERED:  JUNE 14, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0379-MR

DEMETRIUS NORTHERN-ALLISON                                    APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.                    HONORABLE MITCH PERRY, JUDGE
ACTION NO. 18-CI-001963


JOHN SEYMOUR; DAVID
LEDBETTER; MARK GRANHOLM;
AND WILLIAM PEARSON                                              APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, EASTON, AND ECKERLE, JUDGES.

ACREE, JUDGE:  Appellant, Demetrius Northern-Allison, appeals the Jefferson

Circuit Court's March 28, 2022 Order granting summary judgment in favor of

Appellees as to his claims of use of excessive force, civil assault, and civil battery.

All Appellees are officers of the Louisville Metro Police Department.  Appellant

says genuine issues of material fact exist concerning whether Appellees' use of

excessive force when arresting him demonstrate a bad faith performance of their

discretionary duty. We disagree. The facts Appellant says are disputed either are not material to our review or are not genuinely disputed. Conversely, there are no genuine issues regarding the facts that are material to the issue on appeal. We conclude that applying the doctrine of issue preclusion to those undisputed facts entitles Appellees to summary judgment. Therefore, we affirm the circuit court.

## BACKGROUND FACTS AND PROCEDURE

Appellant's claim is based on Appellees' conduct while executing a valid, high-risk, narcotics search warrant. (Record (R.) 349–50). The warrant was issued on the strength of a confidential informant's knowledge. (R. 431). A risk-assessment matrix established that a Special Weapons and Tactics (SWAT) unit was required to serve the warrant. Notable among the risk factors were Appellant's criminal record including armed robbery, resisting arrest, and a "history of using firearms during the commission of a crime[.]" (R. 429–30). Because the search site's entry point was protected by an iron and plexiglass security door, police determined "a ram or breeching [sic] tool [would] be necessary to make entry[.]" (R. 430). A total of thirty-two (32) officers executed the search at multiple entry points.

As explained in more detail by Appellant himself and set forth below, he chose not to voluntarily submit to the search but obstructed it long enough to

attempt destruction of a target of the search – narcotics in his possession.[1]  During the search, Appellees arrested Appellant for violations of the law committed in their presence, seized the evidence targeted, and also seized two firearms.

Appellant was charged with Trafficking in Controlled Substance 1, less than 4 grams, cocaine; Tampering with Physical Evidence; and Resisting Arrest.  He pleaded guilty to these crimes.  (R. 224–25).  Beyond this, there is some dispute.

Notwithstanding Appellees' disagreement with parts of Appellant's account, we undertake this review by relying solely on Appellant's representations of fact and the procedural history, and facts otherwise not in dispute.  We do so in conformity with the requirement to view the record in a light most favorable to the party opposing the motion for summary judgment and resolving all doubts in his favor.  *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991).  Appellant describes the events of April 14, 2017, as follows.

On the evening of the search, Appellant was lying on the couch while his two daughters played in the basement and his son was asleep upstairs.  His peace was interrupted by the sound of breaking glass at his front door.

---

[1] Although cocaine is not pharmacologically a narcotic, Congress exercises its prerogative to classify cocaine as a narcotic for penalty and regulatory purposes.  *United States v. Whitley*, 734 F.2d 1129, 1141 (6th Cir. 1984), *overruled on other grounds*, *see United States v. Robinson*, 887 F.2d 651, 653 n.1 (6th Cir. 1989); 21 United States Code (USC) § 802 (17)(D).

(Appellant's Deposition Transcript at 9:22–23). An exterior iron and glass security door was deadbolted, but the glass had been broken.[2] (*Id.* at 40:24–41:4). The interior door "was cracked"; *i.e.*, was already ajar. (*Id*. at 41:3–4; 45:3–9). Appellant immediately went to the basement to retrieve his daughters to take them to his son's second-floor bedroom. (*Id.* at 9:23–10:5).

As he returned to the first floor with his daughters in his arms, he "heard them say it going past the door"; that is, he heard the intruders identifying themselves as the police serving a search warrant and instructing Appellant to open the door. (*Id.* at 14:20–23; 39:2–3). This was the first moment Appellant acknowledges knowing who was trying to enter his residence. Although the officers still had not succeeded in fully breaching the security door, Appellant saw one of police officers through the doorway because the officer "had pushed the [interior] door open." (*Id*. at 41:3–4; 45:3–9). Appellant did not shut the door at that time but proceeded upstairs with his daughters. (*Id*. at 44:22–45:11).

After Appellant secured the children upstairs, he returned to the first floor and, again, "they identified their self as police, told me to open the door." (*Id.* at 10:7–9). "I didn't open the door initially when he first told me to." (*Id.* at 14:9–11). Instead, Appellant "shut the door . . . [b]ecause I thought he was going

---

[2] This was not a "no-knock" warrant execution and, although Appellees testified they did knock and announce their purpose before attempting to breach the security door, the Court takes Appellant's testimony as true that he did not hear that announcement.

to shoot me." (*Id.* at 45:14–16).  He then picked up packeted cocaine from a bookshelf behind the front door, took the drug to a bathroom, and tried to flush it down a toilet.  (*Id.* at 33:2–19; 40:7–8 ("decided to flush the drugs instead of letting them [the police] in")).

After returning to the front door, Appellant began "screaming . . . I've got kids, can you stop." (*Id.* at 10:12–14).  Once officers breached the door, they took Appellant to the floor where he landed on broken glass and officers kicked and punched him.  (*Id.* at 42:6–25).

According to Appellant, he did nothing "that gave officers a reason to charge [Appellant with] resisting arrest[.]" (*Id.* at 47:3–20).  "I was doing nothing but trying to give them my arms but, if someone's on top of you, you've got people on top of you and one already got one arm – you know, I can't really explain it, but I was trying to give myself up." (*Id.* at 43:1–6).  An officer "was trying to put handcuffs on me." (*Id.* at 11:10–11).  Appellant further testified as follows:

> A. [A] few other ones came in . . . one stepped on me trying to get to the other room . . . I just remember getting struck a few times, you know, initially, when they came through the door, and then on the ground a couple of times, and I remember getting rolled over, and I remember them handcuffing me.  You want me to keep going?
>
> Q. Sure.
>
> A. So, then the next thing you know, I'm, you know, screaming – you know, just different things going on in

> my head. I'm screaming and hooping [sic] and
> hollering, and they had me in the yard.
>
> . . . .
>
> A. As soon as they got me out of the house, you know, my
> neighbor – she first realized – she said she thought that
> my eye was getting ready to come out of my face.

(*Id.* at 11:13–12:8; 44:4–8). Appellant was put in an ambulance and taken

"straight to the hospital" at the University of Louisville before he was jailed. (*Id.*

at 25:5–8).[3]

As noted, *supra*, the Commonwealth charged Appellant with

trafficking, tampering with evidence, and resisting arrest. He initially pleaded

"Not Guilty." (R. 224–25 (*Commonwealth v. Northern-Allison*, No. 17-CR-

001301 (Jefferson Cir. Ct. Jun. 29, 2017) (Judgment of Conviction))).[4] He

subsequently moved the circuit court to allow him to withdraw his previous plea of

"Not Guilty" and to plead "Guilty" to all three charges. Most significantly to this

appeal, he pleaded guilty to resisting arrest. His motion included the following

express affirmations:

---

[3] Appellee points out that the hospital emergency room's "Nursing Triage Note" memorializes Appellant's admission he was trying to retrieve a weapon; the note says: "patient . . . reports being assaulted and Tried [sic] to pull a gun on police officers who then attacked him." However, Appellant denies making such statement. (*Id*. at 31:20–32:15; Exhibit 1).

[4] The instant appeal originated in Jefferson Circuit Court, Division Three (3), Judge Mitch Perry presiding. Appellant's criminal conviction was adjudicated by Judge, now Justice, Angela Bisig, Jefferson Circuit Court, Division Ten (10).

I have reviewed a copy of the indictment and told my attorney all the facts known to me concerning my charges. I believe he/she is fully informed about my case. We have fully discussed, and I understand, the charges *and any possible defenses.*

. . . .

I further understand the Constitution guarantees me the following rights:

. . . .

(d)     The right to produce any evidence, including attendance of witnesses, in my favor;

(e)     The right to appeal my case to a higher court.

I understand that if I plead "GUILTY," I waive these rights.

(R. 132) (emphasis added).

The Jefferson Circuit Court granted Appellant's motion, finding he was represented by counsel and, with advice of that counsel, entered his guilty plea "knowingly and voluntarily" and "that there was a factual basis for it." (R. 480). After a presentence investigation and report, the circuit court adjudicated his guilty plea. (R. 481, 221–23).

The Judgment of Conviction adjudicating Appellant's charges noted that he "entered An [sic] Alford[5] plea of guilty to . . . RESISTING ARREST."

___

[5] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

(R. 221). Of relevance to the instant appeal, the circuit court expressly evoked

Appellant's acknowledgement of his opportunity to allege Appellees' wrongdoing

in defense of the charge against him of Resisting Arrest. The Judgment of

Conviction says:

> The Court inquired of [Appellant] and his attorney whether they had any legal cause to show why judgment should not be pronounced against [Appellant], . . . [and] afforded [Appellant] and his counsel an opportunity to make statements in [Appellant's] behalf and to present any information in mitigation of the punishment and no legal cause was shown why judgment and sentence should not be pronounced against him.

(R. 221–22). Appellant himself thus resolved any genuine issue of fact that he was

guilty of resisting arrest.

Eleven and one-half months after the search that resulted in

Appellant's arrest and ten months after his conviction for resisting that arrest, he

brought the tort claims which led to this appeal.[6] Relevant to our analysis,

Appellant averred that Appellees "violently struck . . . then proceeded, without

justification to unnecessarily and excessively beat, cut, lacerate strike and

abusively manhandle [Appellant] *while handcuffing and arresting him*." (R. 6,

Complaint ¶ 7) (emphasis added). Further, Appellant avers Appellees "used more

---

[6] Appellees conducted the search on April 14, 2017. Appellant's charge of Resisting Arrest was adjudicated June 29, 2017. Appellant filed his civil complaint in this action on April 4, 2018.

force than necessary to arrest [Appellant]" and he makes similar representations of fact within the specific relevant count. (R. 7, Complaint ¶¶ 11, 12).

Significantly, Appellant does not allege the use of excessive force after the arrest and does not direct this Court to such proof. Neither does our own examination of the record reveal such evidence. All the tortious conduct Appellant alleges occurred while he was resisting arrest.

In 2019, Appellees moved the circuit court for summary judgment on two grounds, arguing first that the United States Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), barred Appellant's civil claims. Alternatively, Appellees argued summary judgment was appropriate because they were entitled to qualified official immunity. The circuit court based its summary judgment on the first argument and found no need to address the alternative. That judgment gave rise to Appellant's first appearance before this Court.

In *Northern-Allison v. Seymour*, No. 2020-CA-0637-MR, 2021 WL 1164438 (Ky. App. Mar. 26, 2021) (hereinafter *Northern-Allison I*), this Court reversed the first summary judgment holding that the circuit court misapplied *Heck*. However, we remanded with instructions that "the circuit court must determine whether the officers acted in good faith in using force during [Appellant's] arrest. If this element is satisfied, then the officers, in their

individual capacities, are entitled to qualified immunity."[7] *Northern-Allison I*, 2021 WL 1164438, at *4.

The circuit court re-docketed the case and the parties engaged in further discovery. The circuit court conducted a pre-trial conference, set a trial date, and ordered the parties to brief the issues. (R. 402). Appellees again moved for summary judgment.

At the hearing, Appellees made two arguments. They initially focused on this Court's instruction to address whether Appellees' arrest of Appellant demonstrated good faith or bad faith execution of their discretionary duty. They emphasized the risk matrix indication that accurately predicted Appellant would not cooperate with the search, that entry points were fortified, and that an overwhelming police presence was necessary to minimize the risks both to the police and to the inhabitants of the residence. They noted that Appellant continuously refused their entry while attempting to destroy evidence. (Video Record 2/16/2022 (VR) 10:07:44–10:14:07).

The circuit court turned to Appellant's counsel and asked, "What evidence supports the fact [Appellees] didn't act in good faith?" (VR 10:28:20–

---

[7] As for the typically thornier ministerial-discretionary duty question, this Court held: "The officers were required to use their discretion in using force when [Appellant] failed to comply with their commands and attempted to destroy evidence. Thus, the officers clearly performed a discretionary act in applying force during [Appellant's] arrest." *Northern-Allison I*, 2021 WL 1164438, at *3.

10:28:23).  Counsel for Appellant said the officers' testimony was full of discrepancies as she had described earlier in the hearing – "how long it took to enter the house . . . less than a minute versus several minutes"; how long police "engaged in a struggle with [Appellant] for twenty seconds versus two minutes versus five minutes"; whether Appellant was on the floor or standing when police first entered; whether he was holding a child when they entered or not.  (VR 10:19:14–10:20:45).  Counsel wrapped up by saying, "Those contradictions matter."  (VR 10:20:57–10:21:01).  However, as the court noted, none of those discrepancies has any bearing on the question of the officers' bad faith.

Appellant's counsel also disputed Appellees' claim that Appellant's eye injury was caused by a "hammer strike blow," a recognized police technique to suppress a suspect who is resisting arrest.  (Mari S. Truman, P.E., Deposition at 20:8–25).  She pointed to the deposition of "biomedical expert" Mari Truman who opined that the severity of Appellant's eye injury was not inconsistent with being struck by the butt of a gun, while also acknowledging the possibility Appellees told the truth.[8]  (VR 10:23:04–10:23:21); (Truman Dep. at 39:9–15).  The circuit court agreed the severity of the injury, however caused, would impact a damages claim,

---

[8] Mari S. Truman, P.E., testified by deposition that she was hired to answer the question:  "could the injuries [Appellant sustained] have occurred from being hit with – basically the end of a gun, the butt of a gun, or by being impacted with a flat wall or a door or something.  So that was my original, the original purpose."  (Mari S. Truman, P.E., Deposition at 19:8–13).  She concluded "a blow with the butt of a gun . . . that's probably the most likely scenario . . . but I can't rule out that [Appellee] Seymour aggressively punched and caused that."  (*Id.* at 39:9–15).

but failed to see how the way it was inflicted supported counsel's claim Appellant was not resisting arrest, but was engaging in self-defense when it occurred. The circuit court again asked, "So, what is the evidence excessive force was used?" (VR 10:34:04–10:34:09). Counsel repeated much of what she previously said and followed up by saying after the police found forceful entry necessary, they were guilty of "knocking him in the head, into the glass [on the floor], and then getting on his back." (VR 10:34:16–10:34:27). But Appellees never disputed the claim they "knocked" Appellant in the head, that he went to the floor on glass, or that they rolled him to his back. But this proof was not material to the genuine issue the circuit court was charged with deciding – whether Appellees acted in bad faith.

The circuit court then directed Appellant's counsel's attention to Appellees' alternative argument based on the effect of the guilty plea. Appellees' counsel made that argument, effectively one of issue preclusion, as follows:

> [Appellant] pled guilty to resisting arrest for the exact same facts, the exact same circumstances, that make the basis of his complaint. . . . Self-defense is an affirmative defense in Kentucky to resisting arrest. If an officer uses more force than is reasonably necessary to effectuate an arrest, that force is unlawful, which is the allegation [Appellant] is making today. . . .
>
> He chose, in addition [to pleading guilty to other charges] to plead guilty to resisting arrest. That was a voluntary guilty plea, as part of a plea bargain, and the court, I think, is bound to accept that as fact – his voluntary plea, his voluntary admission.

-12-

(VR 10:14:40–10:16:03).

The circuit court sought Appellant's response to that argument after first explaining:

> This case is different because we do have a guilty plea. Mr. Northern-Allison went into a court before a judge and said, "I'm voluntarily pleading guilty to these set of facts." And, by the way, it makes no difference that it was an Alford plea. He said, "I did this. Or it can be proven." The effect is the same.[9]

(VR 10:33:47–10:34:03). Appellant's counsel's only response was to suggest a jury instruction would address the obstacle her client's plea of guilty presented.

> Counsel: The appropriate way, we believe, to handle that, and a very adequate way, would be a limiting preliminary jury instruction.
>
> Court: Which is?
>
> Counsel: Well, jury instructions we'd obviously have to argue that later. But to inform . . . the jury: "If you find the plaintiff [Appellant] resisted arrest during the time the injuries were sustained – or something like that – you must find for the defendants [Appellees]."

(VR 10:32:11–10:32:47). The circuit court appears not to have been persuaded.

---

[9] We agree with the circuit court on this point. "The entry of a guilty plea under the *Alford* doctrine carries the same consequences as a standard plea of guilty. By entering such a plea, a defendant may be able to avoid formally admitting guilt at the time of sentencing, but he nonetheless consents to being treated as if he were guilty with no assurances to the contrary." *Wilfong v. Commonwealth*, 175 S.W.3d 84, 102 (Ky. App. 2004). "An Alford plea is a 'plea of guilty,' regardless of any denial of underlying facts, and clearly constitutes a criminal conviction." *Pettiway v. Commonwealth*, 860 S.W.2d 766, 767 (Ky. 1993).

The dilemma from the court's perspective was this: "I'm clearly struggling with the notion of: (A) what the Court of Appeals asked me to do, and [(B)] *the effect of the guilty plea* with regard to this good faith analysis which is what I believe the Court of Appeals asked me to do." (VR 10:36:00–10:36:09) (emphasis added). The court then turned to Appellees' counsel.

Appellees' counsel first accepted, *arguendo*, that excessive force was used against Appellant as Appellees entered the premises, after which he resisted arrest, noting this fact pattern supports a statute-based claim of self-defense justifying his resistance to the arrest. *See* KRS[10] 503.060(1). "He didn't raise that. Therefore, I think that guilty plea bars that." (VR 10:38:10–10:38:16). This argument, that the prior adjudication of whether Appellant resisted arrest barred its subsequent re-litigation in a civil trial, persuaded the circuit court.

The court granted Appellees' motion, holding that Appellant "has been unable to demonstrate that the officers acted in bad faith . . . ." (R. 533). The court found conclusive proof to the contrary; *i.e.*, that "Plaintiff pleading guilty to Resisting Arrest demonstrates that the officers were acting reasonably and in good faith." (*Id.*) Our appellate review of that judgment follows.

---

[10] Kentucky Revised Statutes.

## STANDARD OF REVIEW

"An appellate court's role in reviewing a summary judgment is to determine whether the trial court erred in finding no genuine issue of material fact exist[ed] and the moving party was entitled to judgment as a matter of law." *Feltner v. PJ Operations, LLC*, 568 S.W.3d 1, 3 (Ky. App. 2018). Thus, appellate courts review a circuit court's summary judgment *de novo*. *Cmty. Fin. Servs. Bank v. Stamper*, 586 S.W.3d 737, 741 (Ky. 2019).

Specifically, "[i]mmunity is purely a question of law and our review is *de novo*." *Gambrel v. Croushore as Next Friend of Villarreal*, 638 S.W.3d 452, 455 (Ky. App. 2021) (citing *Lawrence v. Bingham, Greenebaum, Doll, L.L.P.*, 567 S.W.3d 133, 137 (Ky. 2018)). *See also Meinhart v. Louisville Metro. Gov't*, 627 S.W.3d 824, 829-30 (Ky. 2021).

Furthermore, "it is well-settled that an appellate court may affirm a lower court for any reason supported by the record." *McCloud v. Commonwealth*, 286 S.W.3d 780, 786 n.19 (Ky. 2009) (citing *Kentucky Farm Bur. Mut. Ins. Co. v. Gray*, 814 S.W.2d 928, 930 (Ky. App. 1991)).

## ANALYSIS

At its core, this case turns on the principles of issue preclusion adopted by our Supreme Court in 1970. *Sedley v. City of West Buechel*, 461 S.W.2d 556, 559 (Ky. 1970) ("The 'preclusion' doctrine seems reasonable to us

and we shall adopt it."). Issue preclusion is "a close cousin to the doctrine of *res judicata*[.]" *Moore v. Commonwealth*, 954 S.W.2d 317, 318 (Ky. 1997). These terms, along with the terms "claim preclusion" and "collateral estoppel," "are often used interchangeably throughout the case law[.]" *Id.* at 318 n.2. *See Yeoman v. Commonwealth, Health Policy Bd.*, 983 S.W.2d 459, 465 n.2 (Ky. 1998) ("Collateral estoppel is a term used by some to refer to issue preclusion"; noting distinctions between claim preclusion and issue preclusion, relative to *res judicata*, all which support applying collateral estoppel). But there are differences, each requiring proof of different elements.

The Supreme Court identified the specific elements necessary to the application of issue preclusion.

> In order for issue preclusion to operate as a bar to further litigation, certain elements must be met: (1) at least one party to be bound in the second case must have been a party in the first case; (2) "the issue in the second case must be the same as the issue in the first case"; (3) "the issue must have been actually litigated"; (4) "the issue was actually decided in that action"; and (5) "the decision on the issue in the prior action must have been necessary to the court's judgment" and adverse to the party to be bound.

*Miller v. Admin. Off. of the Cts.*, 361 S.W.3d 867, 872 (Ky. 2011) (citing *Yeoman*, *supra*, and *Moore*, *supra*).

"There is no question but that a criminal conviction can be used for purposes of collateral estoppel in a later civil action." *Roberts v. Wilcox*, 805

-16-

S.W.2d 152, 153 (Ky. App. 1991). The jurisprudence courts nationwide generally

follow when the conviction is based on a guilty plea is described in 50 C.J.S.

*Judgments* § 1193 (2024), which says:

> A guilty plea may be used to establish issue
> preclusion in a subsequent civil suit. It is accorded the
> same preclusive effect in a subsequent civil proceeding as
> is a conviction after trial, as although the elements of the
> crime have not been litigated, the issues have necessarily
> been judicially determined by the plea. A *judgment based*
> *on a guilty plea is conclusive of all issues that would have*
> *been resolved by a conviction following a contested jury*
> *trial*, and conclusively establishes that the defendant
> engaged in the criminal act for which the defendant was
> convicted. A defendant pleading guilty to a crime has had
> a full and fair opportunity to litigate the defendant's case,
> for purposes of issue preclusion or collateral estoppel,
> even though the defendant has elected not to contest the
> accusations.

(Footnotes omitted) (emphasis added).

There is sound reasoning for applying issue preclusion to foreclose

subsequent civil claims based on the same allegations that were necessarily

adjudicated by the claimant's solemn confession of his own guilt. Two of our

sister courts cogently and concisely express that reasoning as follows:

> To preclude a civil litigant from relitigating an issue
> previously found against him in a criminal prosecution is
> less severe than to preclude him from relitigating such an
> issue in successive civil trials, for there are rigorous
> safeguards against unjust conviction, including the
> requirements of proof beyond a reasonable doubt and of a
> unanimous verdict, the right to counsel, and a record paid
> for by the state on appeal. Stability of judgments and

-17-

expeditious trials are served[,] and no injustice done, when criminal defendants are estopped from relitigating issues determined in conformity with these safeguards.

*A-1 Auto Repair & Detail, Inc. v. Bilunas-Hardy*, 93 P.3d 598, 601 (Colo. App. 2004) (citations omitted) (quoting *Teitelbaum Furs, Inc. v. Dominion Ins. Co.*, 58 Cal.2d 601, 606, 25 Cal.Rptr. 559, 375 P.2d 439, 441 (1962)). This explanation is implicit in *Roberts v. Wilcox*, *supra*, and, because it informs our own appellate review, we are persuaded to embrace it as part of our own analysis.

We are otherwise guided in our *de novo* review by our Supreme Court's touchstone for application of the issue preclusion rule – "The rule contemplates that the court in which the doctrine is asserted will inquire into whether the judgment in the former action was in fact rendered under such conditions that the party against whom the doctrine is pleaded had a realistically full and fair opportunity to present his case." *Kentucky Bar Ass'n v. Greene*, 386 S.W.3d 717, 724 (Ky. 2012). The circuit court generally abided this touchstone by addressing the effect of Appellant's criminal conviction on his civil tort claim. We shall specifically consider the elements of issue preclusion as *Miller*, *supra*, lists them. We reach the same conclusion as the circuit court – summary judgment for Appellees was required as a matter of law.

1. *Party to be bound in second case was party in first case*.

Undoubtedly, the first element is satisfied. Appellant was a party to his criminal proceeding and a final judgment in the instant civil case will bind him.

2. *The issue in the civil case was an issue in criminal case*.

The second element is also satisfied – the issue in the instant civil case is the same as an issue in Appellant's criminal case.

Appellant framed the issue in his civil claim as Appellees having "violently struck" him "unnecessarily and excessively" and "used more force than necessary to arrest" him. (R. 6–7, Complaint ¶¶ 7, 11, 12). These facts – presumed true for purposes of this review – were known to Appellant before pleading guilty. They supported a viable defense to the charge of resisting arrest from the moment the Commonwealth commenced prosecuting Appellant.

"An arrestee would, under [KRS 503.060(1)], of course be privileged to defend himself during an arrest against, for example, gratuitous and unjustifiable brutality." *Ball v. Commonwealth*, No. 2008-SC-000430-MR, 2010 WL 1005944, at *4 n.7 (Ky. Mar. 18, 2010).[11] Appellant maintains "the attempt to arrest [him wa]s unlawful . . . by reason of the manner in which it [wa]s attempted[.]" *Smith v. Commonwealth*, 244 S.W. 878, 879 (Ky. 1922) (internal quotation marks and

---

[11] Because the Supreme Court elected not to publish *Ball*, we do not cite the opinion as precedent. Kentucky Rules of Appellate Procedure (RAP) 41. However, as the final word on the subject by the Commonwealth's court of last resort, we find it pretty persuasive.

citation omitted).  Under such circumstances and within limitations, "the person being arrested may resist with force" without incurring a charge or conviction for resisting arrest.  *Id.*  As interpreted, KRS 503.060(1) thus afforded Appellant a statutory basis to assert the defense.

Given the opportunity to choose between allowing a jury to decide his claim of police misconduct as a defense to the charge of resisting arrest, or deciding the issue himself by pleading guilty, Appellant chose the latter.  He moved the circuit court, "in person and with aid of counsel," to withdraw his original plea of "Not Guilty" and enter a plea of "Guilty."  (R. 132).  Therein, he proclaimed to the court, "I have told my attorney all the facts known to me concerning my charges. . . .  We have fully discussed, and I understand, the charges and *any defense* to them."  (*Id.*) (emphasis added).  Unquestionably, this would include the defense based on identical facts he alleges in his civil claim.

The issue Appellant himself resolved by his guilty plea was whether Appellees assaulted him by using force exceeding what was necessary to arrest him; and that was same issue he wanted the circuit court in this civil case to revisit.  We conclude the issue is identical in the two cases.

3. *The issue was "actually litigated" for purposes of issue preclusion*.

In *Jones v. Acuity*, this Court reviewed the civil case of a claimant of insurance benefits and determined the claimant's guilty plea in a criminal

-20-

prosecution could be the basis for applying issue preclusion where the plea necessarily, albeit implicitly, included an admission of wanton behavior effectively "determining the 'expected or intended' exclusion [in the insurance contract] precludes coverage."  658 S.W.3d 492, 499 (Ky. App. 2022).  However, *Jones* merely presumed a guilty plea satisfies the issue preclusion rule requirement of having "actually litigated" the issue and no party disputed the Court's presumption. Consequently, the fact remains that neither *Jones* nor any other published opinion expressly answers that question.

On the other hand, the unpublished opinion of *Moffett v. Shaw* directly rejected its appellant's argument that pleading guilty is not "actually litigating" an issue.  No. 2014-CA-000774-MR, 2016 WL 426689 (Ky. App. Jan. 29, 2016), *discretionary review denied* (Ky. Oct. 13, 2016) (Clayton, J.) (Kramer, J., and VanMeter, J., concurring).  The circuit court held there was an equivalence, this Court affirmed, and the Supreme Court elected not to conduct a discretionary review.  Although not precedent itself, *Moffett*'s reasoning is solidly based on precedent we find sufficiently compelling to reiterate and adopt here.

The relevant facts in *Moffett v. Shaw* are these:

Edgar Yanez and Manning Shaw were in a vehicle that collided with Ezra Moffett, Jr.'s vehicle. Tragically, Moffett died of his injuries. Following the accident, a criminal indictment was filed against Yanez. Subsequently, he entered a guilty plea [an *Alford* plea to manslaughter] in the criminal proceeding wherein he

-21-

unequivocally admitted to being the driver of the vehicle. However, in this [civil negligence] action, he now maintains that Shaw was the driver.

*Id.* at *1. Shaw argued, "under the doctrine of collateral estoppel, there is no issue of material fact" – Yanez's guilty plea in the prior criminal prosecution conclusively established he was driving the vehicle that killed Moffett. *Id.* This Court agreed with Shaw.

Citing *Bell v. Harmon*, 284 S.W.2d 812, 815 (Ky. 1955), we said, "Yanez's guilty plea occurred during a judicial proceeding, was conclusive against him, and was both unequivocal and uncontradicted. Hence, we conclude[d] that it was a judicial admission." *Moffett*, 2016 WL 426689, at *3. "A judicial admission is a formal act by a party in the course of a judicial proceeding which has the effect of waiving or dispensing with the necessity of producing evidence by the opponent and bars a party from disputing a proposition in question." *Nolin Prod. Credit Ass'n v. Canmer Deposit Bank*, 726 S.W.2d 693, 701 (Ky. App. 1986). Applying that concept to the instant appeal, Appellant admitted his guilt to resisting arrest, thereby dispensing with the Commonwealth's need to produce evidence of Appellees' compliance with KRS 503.060(1) and barring Appellant from asserting the contrary position.

In *Moffett*, we also said, "Yanez's guilty plea was a final decision on the merits. Kentucky courts do not distinguish between pleas of guilty and jury

adjudications of guilty." *Moffett*, *supra*, at *4 (citing *Ray v. Stone,* 952 S.W.2d 220 (Ky. App. 1997)). "A plea of guilty . . . is itself a conviction. Like a verdict of a jury[,] it is conclusive. More is not required; the court has nothing to do but give judgment and sentence." *Commonwealth v. Tigue*, 459 S.W.3d 372, 389 (Ky. 2015) (quoting *Kercheval v. United States*, 274 U.S. 220, 223, 47 S. Ct. 582, 583, 71 L. Ed. 1009 (1927)). *Tigue* thus recognizes that a plea of guilty, "[l]ike a verdict of a jury[,]" serves as an actual adjudication of the issues essential to the conviction. *Id.* This, of course, is consistent with the scope of the rule of issue preclusion based on a guilty plea as set out in 50 C.J.S. *Judgments* § 1193, *supra*.

In *Moffett*, Yanez's judicial admission to driving the vehicle was "integral to the guilty plea, which resulted in a final judgment [of vehicular manslaughter] . . . . Accordingly, it was 'actually litigated' by Yanez's admission" in his guilty plea. 2016 WL 426689, at *5.

Similarly, Appellant necessarily, albeit implicitly, acknowledged Appellees' good faith performance of their duty to arrest him, and the concomitant inconsistency of a claim he acted in self-defense; that acknowledgment was integral to his knowing and voluntary plea of guilty to the charge he resisted arrest. By his guilty plea, Appellant "judicially admitted the underlying requisites." *Toppass v. Commonwealth*, 799 S.W.2d 587, 589 (Ky. App. 1990). That includes

Appellees' compliance with the law limiting police officers to "using no more force than reasonably necessary to effect the arrest . . . ." KRS 503.060(1).

"When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Jackson v. Commonwealth*, 363 S.W.3d 11, 15 (Ky. 2012) (quoting *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S. Ct. 1602, 1608, 36 L. Ed. 2d 235 (1973)). Applying *Jackson* then, Appellant's solemn admission in open court that he is in fact guilty of resisting arrest necessarily implicated the statutory defense comprised of the same facts he subsequently alleged in his civil complaint, then served to effectively adjudicate the defense in favor of Appellees by his own admissions. Appellant thus resolved the KRS 503.060(1) claim once and for all when his freedom was on the line. He cannot afterward resurrect it to pursue monetary relief.

We conclude Appellant's guilty plea satisfies the rule's requirement that the issue was "actually litigated" and, in the context of his KRS 503.060(1) protections, that he had "a realistically full and fair opportunity to present his case." *Greene*, 386 S.W.3d at 724. He voluntarily relinquished that opportunity.

4. *The issue was actually decided against Appellant in the prior action*.

In this case, based as it is on a criminal conviction, analysis of the previous element goes a long way in also determining whether the issue was "actually decided" against Appellant in the prior action. But it still presents a slightly different perspective, requiring slightly different thinking.

A point to be made by separate consideration of this element is that, to satisfy this element of issue preclusion, the issue need not be decided in the prior action by judge or jury. The power to resolve any issue relating to criminal charges resides first in the defendant himself. The criminal defendant is the only human arbiter capable of knowing with moral certainty whether he violated a law; a jury's conviction can establish guilt only by the relatively lesser beyond-a-reasonable-doubt standard.

We are not so naive as to believe every guilty plea affords *judges* or *the public* the assurance of such moral certainty. Innocent defendants, for various reasons, have pleaded guilty, too. But the consequences of a guilty plea can admit of no distinctions. Distinguishing between those pleading guilty because they are guilty and those motivated otherwise would itself require a trial. That would negate all practical function and legal purpose of a guilty plea. The best our system can do is provide alternative procedural safeguards such as withdrawal of a guilty plea or collateral attack based on ineffective assistance of counsel. *See*

-25-

*Tigue*, 459 S.W.3d at 391-92. These protections, such as they are, allow courts to confidently hold that "[s]olemn declarations in open court carry a strong presumption of verity." *Centers v. Commonwealth*, 799 S.W.2d 51, 54 (Ky. App. 1990) (citing *Blackledge v. Allison*, 431 U.S. 63, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977)).

Appellant "entered his guilty plea knowingly and voluntarily . . . [and] may not now challenge the sufficiency of the evidence against him." *Thompson v. Commonwealth*, 147 S.W.3d 22, 42 (Ky. 2004). That would include the sufficiency of evidence contradicting his KRS 503.060(1) defense – evidence that did not need to be presented because of the guilty plea. *Nolin Prod. Credit*, 726 S.W.2d at 701. The defense was not merely waived by his guilty plea but was adjudicated by Appellant's solemn admission in open court. That is the heart of the issue preclusion doctrine, and it precludes Appellant from reframing as civil allegations of assault and excessive use of force the same claim he had the full and fair opportunity to present in the criminal action but abandoned when he pleaded guilty. *Hughes v. Commonwealth*, 875 S.W.2d 99, 100 (Ky. 1994) (citation omitted) ("pleading guilty unconditionally waives all defenses"). "The right to defend is personal. The defendant . . . will bear the personal consequences of a conviction." *Faretta v. California*, 422 U.S. 806, 834, 95 S. Ct. 2525, 2540-41, 45 L. Ed. 2d 562 (1975). Those personal consequences include forfeiting the right to

blame others for a liability the criminal defendant already declared to be entirely his own.

When Appellant pleaded guilty, he alone decided the issue. He alone decided, on balance, that his proof of Appellees' use of excessive force and bad faith execution of their duty to arrest him would not carry the day in a criminal trial. Because we are applying issue preclusion in a civil case where the standard is less stringent than the prior criminal proceedings that first resolved the issue, there is less reason to hesitate. *Contra* 50 C.J.S. *Judgments* § 1001 (2024) (Policy considerations indicate "issue preclusion, should not apply . . . where the standard used in the prior proceeding is less stringent than that used in the subsequent action."). Appellant's decision to abandon the defense that Appellees used excessive force is his admission the evidence is not sufficient even to defeat the prosecutor's heavy burden of proof beyond a reasonable doubt; *i.e.*, Appellant did not believe he could create reasonable doubt in the mind of a single juror that he was justified in resisting arrest. Effectively, Appellant acknowledged the prosecutor could carry his reasonable-doubt burden that Appellees did not use excessive force just as KRS 503.060(1) requires. We know of no policy to be offended by applying the rule here, with a lower more-likely-than-not standard.

Appellant's counsel's argument that a jury instruction could cure the guilty-plea problem is telling. She suggested the issue for the jury would be this:

"If you find [Appellant] resisted arrest . . . you must find for [Appellees]." (VR 10:32:40–10:32:47). But even before 1970 when Kentucky adopted the issue preclusion rule in *Sedley*, *supra*, criminal convictions were admissible in subsequent civil actions as *prima facie* evidence of those factual issues adjudicated in the criminal case. *Wolff v. Emps. Fire Ins. Co.*, 140 S.W.2d 640, 646 (Ky. 1940), *overruled on other grounds by Shatz v. American Sur. Co. of N.Y.*, 295 S.W.2d 809 (Ky. 1955). *Sedley* was among the vanguard of cases recognizing that lack of mutuality of the parties was not the barrier it once was. Other jurisdictions followed the jurisprudential trend earlier embraced by *Sedley* that transitioned from admitting criminal convictions as mere *prima facie* evidence to admitting convictions as conclusive proof of the facts previously determined. *See Seattle-First Nat'l Bank v. Cannon*, 615 P.2d 1316, 1319-20 (Wash. App. 1980) (adopting issue preclusion rule; "The trend, which we adopt here, . . . is to prevent relitigation of a particular issue or a determinative fact after the party estopped has a full and fair opportunity to present its case in order to promote the policy of ending disputes.").

We conclude Appellant's conviction actually decided whether Appellees used excessive force in violation of KRS 503.060(1) or performed their duty in bad faith and that satisfies this fourth element of the issue preclusion rule. And that conviction decided the issue in favor of Appellees.

5. *The decision on the issue in the prior action was necessary to the judgment*.

A circuit court must "satisfy itself that there is a factual basis for a guilty plea[.]" *Chapman v. Commonwealth*, 265 S.W.3d 156, 183 (Ky. 2007), *as corrected* (Dec. 27, 2007), *as modified on denial of reh'g* (Aug. 21, 2008). "When the judge discharges that function, [s]he leaves a record adequate for any review that may be later sought . . . and *forestalls the spin-off of collateral proceedings that seek to probe murky memories*." *Boykin v. Alabama*, 395 U.S. 238, 244, 89 S. Ct. 1709, 1712-13, 23 L. Ed. 2d 274 (1969) (emphasis added) (citations and footnotes omitted).

In this civil case, the circuit court, Judge Perry, reviewed the adequate record Judge Bisig left when she accepted Appellant's guilty plea, and he determined it did forestall this collateral proceeding attacking Judge Bisig's adjudication. This Court reviewed that same adequate record to see if the factual basis for accepting the guilty plea necessarily included Judge Bisig's determination that Appellees did not use excessive force in making Appellant's arrest, even if only implicitly made. We conclude that implicit determination was a necessary component of the guilty plea.

Using the applicable statutory language, Appellant's civil action avers that his "use of physical force"[12] upon Appellees "[wa]s justifiable . . . to protect

---

[12] KRS 503.060.

himself against"[13] Appellees' use of "more force than reasonably necessary to effect the arrest . . . ."[14] If Judge Bisig's assessment of Appellant's guilty plea had revealed that Appellees used excessive force in the arrest, the guilty plea would have lacked a factual basis and would not have satisfied the standard established in *Boykin*. The record shows nothing that contradicts Judge Bisig's determination that Appellant's guilty plea was factually based, and that includes the inference, now irrebuttable, that Appellees did not use excessive force while arresting Appellant – a necessary requirement of Appellant's conviction for resisting arrest.

The *Boykin* analysis requiring judicial probing into the plea is designed to yield the court's assurance that the criminal defendant knows what he is doing. That is why the criminal defendant is made to acknowledge his possible defenses in his motion to change his plea – "By pleading guilty, [Appellant] waived all defenses other than that the indictment charges no offense." *Toppass*, 80 S.W.3d at 798. The criminal defendant's knowledge he is waiving defenses is necessarily a part of the *Boykin* guilty-plea inquiry. And although the judge cannot practice defense counsel's case, she still must assure herself of the defendant's belief (if not her own belief) that no viable defense exists.

---

[13] KRS 503.050(1).

[14] KRS 503.060(1).

Judges have been known to reject a guilty plea when the *Boykin* inquiry elicits concern that the defendant was enticed to plead guilty "to the point of neglecting his defense" to the charges. *Skinner v. Commonwealth*, 864 S.W.2d 290, 294 (Ky. 1993). On the other hand, there is no "requirement that the defendant be informed of every possible consequence and aspect of the guilty plea." *Turner v. Commonwealth*, 647 S.W.2d 500, 500-01 (Ky. App. 1982). "A guilty plea that is brought about by a person's own free will is not less valid because he did not know all possible consequences of the plea and all possible alternative courses of action." *Id.* at 501. We have an illustration of this principle in an unpublished but persuasive opinion of this Court, *Garrett v. Webb*, No. 2007-CA-000045-MR, 2008 WL 275168 (Ky. App. Feb. 1, 2008), an opinion authored by now Chief Justice VanMeter, with the concurrences of now Justices Nickell and Thompson.

In *Garrett v. Webb*, a criminal defendant "entered a circuit court guilty plea to a single charge of possession of dangerous contraband" – marijuana. 2008 WL 275168, at *1 (footnote omitted). In a subsequent civil action seeking a declaratory judgment, the defendant wanted to challenge the method of field testing the contraband. This Court refused to allow the subsequent, collateral action to proceed. *Id.* at *2. We said, because Garrett "*necessarily* admitted to the offense and *waived any defenses* when he pled guilty, the claims raised herein

-31-

regarding the propriety of the field tests are rendered moot." *Id.* (emphasis added).

Although *Garrett* is not precedent, it is entirely consistent with a case originating

in Kentucky and decided by the Supreme Court of the United States, *Parke v.*

*Raley*, 506 U.S. 20, 113 S. Ct. 517, 121 L. Ed. 2d 391 (1992).

*Parke* reaffirms the "deeply rooted . . . 'presumption of regularity'

that attaches to final judgments, even when the question is waiver of constitutional

rights." 506 U.S. at 29, 113 S. Ct. at 523. In this case, constitutional rights are not

at stake, but merely statutory rights (under KRS 503.060(1)). In *Parke*, a *Boykin*

analysis was the context of the Court's discussion of the presumption of regularity,

but the reasoning is applicable here.

Just as the conviction in Appellant's criminal case was based on his

plea of guilty to resisting arrest, the conviction in *Parke* was based on the

respondent's guilty plea to the charges against him. *Parke, supra,* at 23, 113 S. Ct.

at 520. Like Appellant, the respondent in *Parke* "never appealed his convictions

for those crimes." *Id.* "They became final years ago, and he now seeks to revisit

the question of their validity in a separate . . . proceeding." *Id.* at 29, 113 S. Ct. at

523.

It is important to understand that, like the respondent's challenge in

*Parke*, Appellant's civil action is a collateral attack on his conviction. As the

Supreme Court said, "Respondent, by definition, collaterally attacked his previous

-32-

convictions; he sought to deprive them of their normal force and effect in a proceeding that had an independent purpose other than to overturn the prior judgments." *Id.* at 30, 113 S. Ct. at 523 (citation omitted). The same is true of Appellant's civil claim. The "presumption of regularity" was at the heart of *Parke* and is at the heart of this case. As the Supreme Court said, "Although we are perhaps most familiar with this principle in habeas corpus actions, it has long been applied equally to other forms of collateral attack . . . ." *Id.* at 30, 113 S. Ct. at 523 (citations omitted) (citing *Voorhees v. Jackson,* 35 U.S. (10 Pet.) 449, 472, 9 L. Ed. 490 (1836) (observing, in a collateral challenge to a court-ordered sale of property in an ejectment action, that "[t]here is no principle of law better settled, than that every act of a court of competent jurisdiction shall be presumed to have been rightly done, till the contrary appears")).

We conclude a finding that Appellees did not use excessive force while arresting Appellant was necessary, albeit implicit, to Judge Bisig's adjudication of Appellant's conviction based on the evidence of his plea of guilty to resisting arrest. If that were not so, the plea would have lacked the factual basis Judge Bisig found did exist and, thus, allowing Appellant's civil claim to proceed would undermine the deeply rooted presumption of regularity of criminal convictions.

## SUMMARY

In summary, we simply again excerpt the words of Geoffrey C. Hazard, Jr., late Trustee Professor of Law Emeritus at the University of Pennsylvania Law School, whose article this Court first quoted in *Gossage v. Roberts*, 904 S.W.2d 246, 248 (Ky. App. 1995), and repeated in *Ray v. Stone*, 952 S.W.2d 220, 224 (Ky. App. 1997):

> Particularly galling is the situation where a criminal convicted on his own guilty plea seeks as plaintiff in a subsequent civil action to claim redress based on a repudiation of the confession. The effrontery or, as some might say it, *chutzpah*, is too much to take. There certainly should be an estoppel in such a case.

Geoffrey C. Hazard Jr., *Revisiting the Second Restatement of Judgments; Issue Preclusion and Related Problems*, 66 CORNELL L.REV. 564, 578 (1981).

## CONCLUSION

For the aforementioned reasons, we affirm the Jefferson Circuit Court's March 28, 2022 Order granting summary judgment.

ECKERLE, JUDGE, CONCURS.

EASTON, JUDGE, DISSENTS AND FILES SEPARATE OPINION.

EASTON, JUDGE, DISSENTING: With some hesitation, I dissent. In *Northern-Allison I*, a different panel of this Court reversed summary judgment in this case because the circuit court had relied on an aspect of *res judicata*, specifically collateral estoppel through issue preclusion, referring to cases like *Heck, supra.* In

-34-

*Heck*, a civil rights claim for essentially malicious prosecution was held to be barred unless the claimant's underlying criminal conviction was first invalidated. Unlike *Heck*, the present case does not involve a claim like malicious prosecution which, by its very nature, would necessitate an invalidation of an underlying conviction for the claim to proceed. This case involves a claim of immunity for an alleged assault due to the use of excessive force.

Whether immunity applies is ultimately a question of law. In many cases, the factual predicates for this legal question may be determined by summary judgment. Indeed, for true immunity to work, it should eliminate not just ultimate potential liability but also the burdens of participation in a suit. But summary judgment cannot always be justified when immunity is asserted.

Kentucky's summary judgment standard remains strict. Juries decide factual disputes, even in cases where the courts may believe it is "highly doubtful" that a jury will find in favor of the claimant. *Huddleston v. Hughes*, 843 S.W.2d 901, 907 (Ky. App. 1992) (Gudgel, J., concurring). When wrongful conduct by officers is alleged, the factual questions related to bad faith for immunity and any wrongfulness of the officer's actions may overlap and create a jury issue. *See Brandenburg v. Cureton*, 882 F.2d 211, 215-16 (6th Cir. 1989). *See also Norton Hospitals v. Peyton*, 381 S.W.3d 286, 290-91 (Ky. 2012).

Fortunately, for future cases, the presence of officer worn cameras can preserve evidence which may make summary judgment appropriate. *See Sholar v. Turner*, 664 S.W.3d 719, 725 (Ky. App. 2023) (courts may consider indisputable video evidence which is contrary to the testimony of a party in granting summary judgment). The date of the incident in question may explain why there is no video evidence here. These events with the Appellant occurred before some later incidents of national interest which encouraged the use of recording devices. Suggestions in this record indicate a lack of policy requiring recording at this earlier time.

After we returned this case to the circuit court to determine only if the Appellant may be able to make the requisite showing of bad faith to overcome the official immunity of the officers, the majority now revisits the question of issue preclusion in the context of assessing bad faith. While I do not disagree with much of the excellent analysis of issue preclusion, I cannot agree with the conclusion on one element of issue preclusion – the identity of the issue addressed in the prior adjudication.

The Appellant pled guilty to resisting arrest. While that conviction remains, he cannot say he is not guilty. The Appellant could have argued self-protection as a defense under our laws of justification contained in KRS Chapter 503. The majority concludes that, because the Appellant failed to do so, the

-36-

officers must have acted in good faith because the force used during the resisting arrest event arguably was not sufficient to sustain a self-protection defense, which was not specifically asserted. Thus, the officers did not act in bad faith and immunity bars the claim of assault by excessive force.

The problem with this conclusion is that it extends the crime of resisting arrest, which may occur at any given time during an interaction with police, to subsume any improper use of excessive force, which may also occur at any time during an interaction with the police. But the prior conviction simply determined that, at a specific point, the Appellant resisted arrest without any claim of justification. That is not necessarily the same question to be addressed in this civil suit. Excessive force may have occurred before or after the resisting arrest event.

Courts in Kentucky have addressed this precise question. The crime of resisting arrest may have been committed by one against whom excessive force has been used. The conviction for resisting arrest does not prevent the civil claim. *Donovan v. Thames*, 105 F.3d 291, 296 (6th Cir. 1997) (applying Kentucky law). *See also Gonzalez v. Lasardi*, 930 F. Supp. 2d 840, 852 (E.D. Ky. 2013). A criminal conviction for resisting arrest is not necessarily inconsistent with a civil claim of assault arising from the use of excessive force.

The Appellant has offered his sworn testimony that, before he physically resisted in any way, he was hit in the face with what he believes was a weapon.  He further offers expert witness evidence that the fracture of his orbital socket is consistent with his version of events, although strikes he may have permissibly received during the admitted resisting event may also be consistent with this injury.  The Appellant's version of events is consistently denied by the dozens of officers on the scene.  But, in these circumstances, neither we nor the circuit court may choose which testimonial evidence to believe for summary judgment purposes about what precisely happened, although it may be a close call on this record if we truly follow the language of our summary judgment rule which requires a *genuine* issue of material fact.

Let us change the alleged events only slightly to further illustrate the problem.  Let us say that an individual was subdued after clearly resisting arrest.  Then, he verbalizes something not to an officer's liking.  The officer then hits the individual in the head and fractures his skull, even though the individual is on the ground handcuffed and immobilized.  Surely, we do not mean to suggest that because the individual later pleads guilty to resisting arrest that he cannot claim that officers acted in bad faith by assaulting him through the use of excessive force.  A blanket holding that a conviction for resisting arrest establishes a lack of bad

faith and prevents any claim of excessive force at any time during the interaction with the police could be used to justify such an argument.

The claim in the present case is not so different from the hypothetical. Here the Appellant claims he was struck *before* any physical resistance on his part. While it is at least highly doubtful that he can prove this, Kentucky's summary judgment standard gives him the opportunity to try. I would reverse the summary judgment again and let a Jefferson County jury finally determine the claim.

BRIEF FOR APPELLANT:

Sara E. Collins
Sam Aguiar
Louisville, Kentucky

BRIEF FOR APPELLEE:

Michael J. O'Connell
Jefferson County Attorney

Roy C. Denny
Assistant Jefferson County Attorney
Louisville, Kentucky